UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXCLUSIVE TRIM, INC., <br><br> Petitioner, <br><br> v. <br><br> KASTAMONU ROMANIA, S.A., <br><br> Respondent. | Civil Action No. 1:23-cv-3410 <br><br> ECF Case <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD** |

Petitioner Exclusive Trim, Inc. ("Petitioner") respectfully submits this Memorandum of Law in Support of Petition to Confirm Arbitration Award.

## BACKGROUND

Petitioner was the claimant/counterclaim-respondent in an arbitration styled, Exclusive Trim, Inc. v. Kastamonu Romania, S.A., before the International Centre for Dispute Resolution, Case No. 01-222-0001-1647 (the "Arbitration"). Petitioner prevailed in the Arbitration pursuant to a Final Award rendered on March 9, 2023 (the "Award"). A copy of the Award is attached as Exhibit B to the accompanying Declaration of William K. Hill ("Hill Decl.").

Petitioner is a Florida corporation with its principal place of business in Florida. Award ¶ 2. Respondent Kastamonu Romania, S.A. ("Respondent") is a Romanian corporation with its principal place of business in Romania. Respondent was the respondent and counterclaimant in the Arbitration. *Id.* ¶ 3. Petitioner and Respondent are parties to a Supply Agreement dated August 24, 2020. The Supply Agreement is attached to the Hill Declaration as Exhibit A. The Supply Agreement contains a broad arbitration provision requiring that "[a]ny controversy or claim arising out of or related to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules,

1

and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." Award ¶ 15 (citing Supply Agreement § 16.3). The arbitration provision designates New York as the place of arbitration. *Id.* The Supply Agreement also contains a prevailing-party attorneys' fee provision. *Id.* ¶ 16 (citing Supply Agreement § 16.12).

On March 17, 2022, Petitioner commenced the Arbitration under the Supply Agreement by filing a notice of demand with the America Arbitration Association (the "AAA"), asserting breach of contract and unjust enrichment against Respondent. *Id.* ¶ 28. The Arbitration was assigned to the AAA's international division, the International Centre for Dispute Resolution ("ICDR"), and an arbitrator was duly appointed. *Id.* ¶ 29. On May 11, 2022, Respondent filed an answer and a counterclaim against Petitioner. *Id.* ¶ 30. Respondent agreed in its answer that the AAA/ICDR had jurisdiction over the parties' dispute, that New York law governed the interpretation of the Supply Agreement, and that the Arbitration should proceed before a single arbitrator. *See* Resp't Answering Statement & Countercl. ¶¶ 10-12 (Hill Decl., Ex. C).

Between May and November 2022, the parties participated in various prehearing and discovery proceedings. *See* Award ¶¶ 31-45. On December 13 and 14, 2022, the arbitrator held an evidentiary hearing in New York, New York. Petitioner called a single fact witness and two expert witnesses. Respondent called a single fact witness. *Id.* ¶ 47. Following the evidentiary hearing, both sides submitted post-hearing briefs and applications for attorneys' fees and costs. *See id.* ¶¶ 48-49.

On February 4, 2023, the arbitrator formally closed the hearing. *Id.* ¶ 50. On February 28, 2023, both sides agreed to a one-week extension of the deadline to issue the Award. *Id.* ¶ 51. On March 9, 2023, the arbitrator timely issued his reasoned Award, finding for Petitioner on its claims and rejecting Respondent's counterclaim. *See id.* ¶¶ 56-58.

**ARGUMENT**

The Court should summarily confirm the Award under the Federal Arbitration Act and award Petitioner its costs and attorneys' fees for this proceeding.

**I.     The Court has subject-matter and personal jurisdiction in this proceeding, and venue is proper in this district.**

This Court has subject-matter jurisdiction over this dispute based on two alternative jurisdictional principles. This Court has original jurisdiction over this application under 9 U.S.C. § 203 because the proceeding falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"). The Award is a nondomestic arbitral award under 9 U.S.C. § 202 because Petitioner is a citizen of the United States and Respondent is a citizen of Romania. *See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 786 (2023) (holding that an arbitration award is "not considered domestic" if it is an award "involving parties domiciled or having their principal place of business outside the enforcing jurisdiction" (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983))).

This Court also has original jurisdiction over this application under 28 U.S.C. § 1332(a)(2) because Petitioner is a citizen of Florida, Respondent is a citizen of Romania, and the amount in controversy exceeds $75,000, exclusive of interests and costs. The Award awarded damages, costs, and attorneys' fees totaling $982,501, and the full amount remains unpaid.

In addition, this Court has personal jurisdiction over the Respondent because, by consenting to arbitration in New York, Respondent also consented to personal jurisdiction in New York on an action to confirm an award resulting from that arbitration. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that

jurisdiction."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) (holding that "an agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York").

Finally, venue is proper in this judicial district under 9 U.S.C. § 204 because the place of the arbitration was New York, New York.  *See Doctor's Assocs., Inc.*, 85 F.3d at 983.  Venue is also proper under 9 U.S.C. § 9 because the Award was made in New York, New York.

## II.   The Court should summarily confirm the Award.

The New York Convention applies "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73-74 (2d Cir. 2017) (citing New York Conv., art. 1).  Such "nondomestic arbitral awards" include awards, such as the Award here, that were "decided under the laws of the United States but involve[] . . . entities that are not U.S. citizens." *Id*.  Because the present Award was made under the laws of the United States but involved a citizen of Romania, it is a nondomestic arbitral award.  Such a nondomestic arbitral award is subject to confirmation pursuant to a summary proceeding:

> "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). The review of arbitration awards is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Accordingly, "the showing required to avoid summary confirmance is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987).

*Yusuf Ahmed Alghanim & Sons v. Toys "R" US,* 126 F.3d 15, 23 (2d Cir. 1997).

Petitioner does not know whether Respondent will oppose this petition or what defenses it might raise, but it is apparent from the record that there are no legitimate bases to oppose

confirmation of the Award. Respondent participated in the Arbitration, stipulated to the jurisdiction of the tribunal, and even raised a counterclaim. In short, the Award is enforceable and should be summarily confirmed.

### III. The Court should award Petitioner its costs and attorneys' fees for this proceeding.

This Court should award Petitioner its costs and attorneys' fees for this proceeding under paragraph 16.12 of the Supply Agreement, which states: "Should any party to this Agreement institute any action or proceeding to enforce any terms of provision of this Agreement, the parties agree that the prevailing party shall be entitled to reimbursement by the losing party of all costs and expenses incurred thereby, including reasonable attorneys' fees in accordance with this Agreement." This is an action to enforce paragraph 16.3 of the Supply Agreement, which provides that judgment on an arbitration award for a claim arising out of the Supply Agreement may be entered in any court with jurisdiction. *See* Supply Agr. ¶ 16.3 (Hill Decl., Ex. A). Accordingly, this proceeding falls within the definition of "proceeding" in paragraph 16.12, and costs and fees should be awarded.

### CONCLUSION

Based upon the petition and the authorities cited in this memorandum of law, the Court should summarily confirm the Award, enter judgment in favor of Petitioner and against Respondent in the full amount of the Award, plus interest at 9%, and award Petitioner its attorneys' fees and costs of this proceeding pursuant to the terms of the Supply Agreement.

Dated:  April 24, 2023

        PASHMAN STEIN WALDER HAYDEN, P.C.

        By: s/ David N. Cinotti
            Joseph A. D'Avanzo
            David N. Cinotti
        2900 Westchester Avenue
        Suite 204
        Purchase, New York 10577
        Telephone: 914-612-4092
        jdavanzo@pashmanstein.com
        dcinotti@pashmanstein.com

        GUNSTER
        William K. Hill (*pro hac vice* to be filed)
        Teresa S. Muñiz (*pro hac vice* to be filed)
        600 Brickell Avenue, Suite 3500
        Miami, Florida 33131
        Telephone: 305-376-6000
        whill@gunster.com
        tmuniz@gunster.com

        *Attorneys for Applicant Exclusive Trim, Inc.*