USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 10/12/23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**EXCLUSIVE TRIM, INC.,**

        Petitioner,

-against-

**KASTAMONU ROMANIA, S.A.,**

        Respondent.

**23-cv-03410 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, United States District Judge:**

Petitioner Exclusive Trim, Inc. ("ETI" or "Petitioner") filed a petition ("Petition") pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, ("New York Convention"), 9 U.S.C. § 201 et seq., and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., seeking confirmation and enforcement of a foreign arbitration award[1] (the "Award") issued against Respondent Kastamonu Romania, S.A. ("KR" or "Respondent") in an arbitration before the International Centre for Dispute Resolution ("ICDR"). For the reasons set forth below, ETI's Petition to confirm the Award is **GRANTED**

**BACKGROUND**

    **I.**    **Procedural Background**

On April 24, 2023, ETI filed a Petition to confirm a foreign arbitration award, ECF No. 1, a memorandum in support thereof, s*ee* Mem., ECF No. 5, and supporting documentation. *See* Decl. of William K. Hill ("William Decl."), ECF No. 6. On that same day, Petitioner filed a certificate of service affirming that Petitioner's counsel had emailed and mailed copies of the Notice of

---

[1] The New York Convention, also called the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, defines its application, in relevant part, as to "awards not considered domestic." Art. 1. As the Convention's title suggests, such non-domestic awards are also referred to as foreign awards, and we will use the latter term here. *See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 n.3 (2d Cir. 2022), cert. denied, 143 S. Ct. 786, 215 L. Ed. 2d 52 (2023)

Petition, the Petition, the supporting memorandum of law, and the William Declaration to Respondent and Respondent's counsel. *See* Certificate of Service, ECF No. 7.

On June 7, 2023, Petitioner filed a letter motion requesting the Court to treat the Petition like an unopposed motion for summary judgment. *See* Mot., ECF No. 10. On that same day, the Court issued an Order to Show Cause directing Respondent to show cause why the Petition should not be deemed as unopposed. *See* OSHOW, ECF No. 11. The Court ordered Respondent to file a written response by June 22, 2023. *Id*. The Court's order, along with another copy of the Petition papers, was sent to Respondent via first class mail on June 8, 2023. Certificate of Service, ECF No.12. To date, Respondent has failed to respond to the Petition or OSHOW. Accordingly, the Petition is deemed unopposed.

## II. Factual Background

Petitioner ETI is a Florida corporation with its principal place of business in the Coral Springs, Florida. Pet. ¶ 5. Respondent is a Romanian corporation with its principal place of business in Romania. *Id*. ¶ 6. Petitioner is an American residential door distributor and Respondent is a door skin manufacturer. *See* Ex. B. to Hill Decl. ("Award") ¶ 1, ECF No. 6-2.[2] Petitioner and Respondent are parties to a Supply Agreement dated August 24, 2020. Pet. ¶ 7; *see also* Ex. A. to Hill Decl. ("Supply Agreement"), ECF No. 6-1.[3] The Supply Agreement "required that a minimum number of skins must be purchased in the first year." Award ¶ 1. "After the delivery of a portion of the door skins far less than the minimum required, ETI informed Kastamonu that it was getting out of the door-making business and that it would not purchase any more door skins." *Id*. A dispute

---

[2] A copy of the final award rendered on March 9, 2023 is attached to the Declaration of William K. Hill as Exhibit B. ECF No. 6-2.

[3] A copy of the Supply Agreement is attached to the Declaration of William K. Hill as Exhibit A. ECF No. 6-1.

subsequently arose between the Parties concerning certain deposits made by ETI, which Kastamonu did not return, and ETI's refusal to purchase and take certain door skins that Kastamonu produced." *Id*.

The Supply Agreement contains an arbitration provision requiring that "[a]ny controversy or claim arising out of or related to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." Supply Agreement § 16.3; Pet. ¶ 7. The arbitration provision designates New York as the place of arbitration. *Id*. The Supply Agreement also contains a prevailing-party attorneys' fee provision. *Id.* § 16.12.

On March 17, 2022, ETI commenced arbitration proceeding (the "Arbitration") under the Supply Agreement by filing a notice of demand with the America Arbitration Association (the "AAA"), asserting breach of contract and unjust enrichment against Respondent. Pet. ¶ 8. The Arbitration[4] was assigned to the AAA's international division, the ICDR, and an arbitrator was duly appointed. *Id*. On May 11, 2023, Respondent filed an answer and a counterclaim against Petition. *Id*. ¶ 9; *see also* Ex. C to Hill Decl. ("Respondent's Answering Statement"), ECF No. 6-3.[5] Respondent agreed in its answer that the AAA/ICDR had jurisdiction over the parties' dispute, that New York law governed the interpretation of the Supply Agreement, and that the Arbitration should proceed before a single arbitrator. *See* Respondent's Answering Statement ¶¶ 10–12.

Between May and November 2022, the parties participated in various prehearing and discovery proceedings. *See* Award ¶¶ 31–45. On December 13 and 14, 2023, the arbitrator held an

---

[4] ICDR case no. 01-22-0001-164. *See* Pet. ¶ 5.

[5] A copy of Respondent's Answering Statement and Counterclaim filed in the Arbitration is attached to the Declaration of William K. Hill as Exhibit C.

3

evidentiary hearing in New York, New York. *Id*. ¶ 47; Pet. ¶ 10. Petitioner called a single fact witness and two expert witnesses, and Respondent called a single fact witness. Award ¶ 47. Following the evidentiary hearing, both sides submitted post-hearing briefs and applications for attorneys' fees and costs. *See id*. ¶¶ 48–49.

On March 9, 2023, the arbitrator issued the Award, finding for Petitioner on its claims and rejecting Respondent's counterclaim. *Id*. ¶ 11; *see* also Award. The Award awarded damages to Petitioner in the amount of $610,000.00, plus attorneys' fees in the amount of $256,292.00, arbitration costs and expenses in the amount of $78,659.28, and administrative fees and expenses and arbitrator's compensation and expenses in the amount of $38,550.00.00. The total amount awarded to Petitioner was $982,501.28. Pet. ¶ 12; Award at 17. The Award awarded Respondent no damages or other remedies on its counterclaim. Pet. ¶ 12. The Award was required to be paid within 30 days of March 9, 2023, and after that date, would bear simple interest at 9%. *Id*. Award at 17. According to Petitioner, Respondent has not paid ETI any of the sums due under the Award. *Id*. ¶ 13.

## STANDARD OF REVIEW

I.    **New York Convention**

Petitioner brought this action under the New York Convention, more formally known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (as applied through the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208). The Court must determine if it has jurisdiction over the Petition pursuant to the New York Convention. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (explaining that 9 U.S.C. § 203 confers

"federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the [New York] Convention").

Article I of the New York Convention states that it "appl[ies] to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal," as well as "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, art. I(1). In implementing the New York Convention, the FAA likewise provides that the New York Convention applies to "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," although it does not cover "[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States . . . unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relationship with one or more foreign states." 9 U.S.C. § 202.

An arbitration agreement falls within the scope of the New York Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)). With respect to the fourth requirement, "[t]he Convention applies to 'arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007)

(quoting 9 U.S.C. § 202). An action within the New York Convention's scope is "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203.

II.  **Confirmation of Award**

Any party to an arbitration resulting in an arbitration award that falls under the New York Convention may seek an order confirming the award from a district court within three years of the award. 9 U.S.C. § 207; *see also id.* § 203 ("The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.") A district court "shall confirm" an arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207. "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Temsa Ulasim Araclari Sanayi v. Ticaret A.S.*, No. 22 CIV. 492 (JPC), 2022 WL 3974437, at *3 (S.D.N.Y. Sept. 1, 2022) ("*Temsa*") (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica*, Inc., 403 F.3d 85, 90 (2d Cir. 2005).

Under Article V of the New York Convention, "recognition and enforcement of the award may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; or (2) "the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" or (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the award which contains decisions on matters submitted to arbitration may be recognized and

enforced;" or (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, art. V. Additionally, "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id*.

The Second Circuit has held that confirmation under the New York Convention is a "summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler*, 500 F.3d at 169 (citations omitted); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (an application to confirm a foreign arbitral award "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."). In fact, the New York Convention "'evince[s] a pro-enforcement bias' by obligating courts . . . to enforce a foreign arbitral award, subject only to limited exceptions." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 (2d Cir. 2022) (quoting *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) ("Pemex")). "A district court judge 'does little more than give the award the force of a court order.'" *Temsa*, 2022 WL 3974437, at *4 (quoting *Zeiler*, 500 F.3d at 169). In doing so, a district court affords significant deference to

7

the arbitrator's findings. *See Commodities & Mins. Enter. Ltd.*, 49 F.4th at 809 (a district court should be "extremely deferential" to the findings of the arbitrator).

"In sum, a district court must enforce an arbitral award unless a litigant satisfies one of the seven enumerated defenses [under the New York Convention]; if one of the defenses is established, the district court may choose to refuse recognition of the award." *Id*. at 810 (quoting *Pemex*, 832 F.3d at 106). The "party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses" applies and this burden is a "heavy one, as the showing required to avoid summary confirmation is high." *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (citations omitted).

"Even if a petition to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts." *Drip Cap., Inc. v. M/S. Goodwill Apparels*, — F.Supp.3d—, No. 22-CV-2806 (ALC), 2023 WL 2707202, at *5 (S.D.N.Y. Mar. 30, 2023); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (when a petition to confirm an arbitration award is unopposed, courts should treat the petition "as akin to a motion for summary judgment"); *see also Temsa*, 2022 WL 3974437, at *4. Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).5 A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**DISCUSSION**

**I.       Jurisdiction under the New York Convention**

The Court finds that it has jurisdiction over this Petition. The arbitral agreement in this mater falls within the scope of the New York Convention as the four jurisdictional requirements are satisfied. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. First, the Supply Agreement is a written agreement. *See generally* Supply Agreement. Second, both the United States and Romania are signatories of the New York Convention. *See* New York Convention. Third, the subject matter of the Supply Agreement is commercial in nature. *See* Supply Agreement. Lastly, the Respondent is a foreign corporation and therefore the New York Convention applies. *Drip Cap., Inc.*, —F.Supp.3d—, 2023 WL 2707202, at *5 (collecting cases); *Commodities & Mins. Enter. Ltd.*, 49 F.4th at 809 (holding that an arbitration award is "not considered domestic" if it is an award "involving parties domiciled or having their principal place of business outside the enforcing jurisdiction") (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983))). Thus, the Court has jurisdiction under the New York Convention over this Petition.

**II.      Confirmation of Award**

A district court must enforce an arbitral award unless a litigant satisfies one of the seven enumerated defenses under the New York Convention, and if one of the defenses is established, the district court may choose to refuse recognition of the award. *Commodities & Mins. Enter. Ltd*. 49 F.4th at 810.

ETI has adequately shown that there is no genuine issue of material fact precluding judgment in its favor. The Court finds that the arbitrator's findings adhered to the terms of the Supply Agreement and were well within the bounds of its authority. The arbitrator found that the Supply Agreement contained an impermissible penalty, and that the Respondent could not keep

9

Petitioner's deposit of $610,000. Award ¶¶ 56–76. The Supply Agreement also provided for arbitration if a dispute occurs. *See* Supply Agreement § 16.3; Pet. ¶ 7. Additionally, before the evidentiary hearing, the parties participated in various prehearing and discovery proceedings. *See* Award ¶¶ 31–45. At the hearing, both parties offered witness testimony, and following the evidentiary hearing, both sides submitted post-hearing briefs and applications for attorneys' fees and costs *Id*. ¶ 47–49. The arbitrator ultimately found that Respondent was required to return a $610,000 deposit to ETI and rejected Respondent's counterclaim.

The burden of proof with respect to the affirmative defenses set forth in the New York Convention lies with the respondent. *Temsa*, 2022 WL 3974437, at *5 (citing *Encyclopaedia Universalis S.A.*, 403 F.3d at 90). Here, the Respondent, has not appeared in this action, nor has it opposed the Petition. "Where, as here, the 'non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it.'" *Id*. (quoting *D.H. Blair & Co.*, 462 F.3d at 109). Additionally, "if a petition to enforce an arbitration award is unopposed, a court need not inquire on its own into whether an exception to enforcement applies." *PKT Assocs., Inc. v. Granum Grp., LLC*, No. 18-CV-1169 (VEC), 2018 WL 3392879, at *1 (S.D.N.Y. July 12, 2018). In any event, there is nothing in the record to suggest that any of the defenses in the New York Convention would apply in this case. Additionally, the Court finds no basis to second-guess the arbitrator's decision to hold Respondent liable for arbitration costs and Petitioner's attorneys' fees. Thus, the Court confirms the Petitioner's timely application for confirmation of the Award.

## CONCLUSION

For the reasons above, the Petition is **GRANTED**. The Petitioner is directed to file a proposed judgment in accordance with the Award on or by **October 16, 2023.** The Clerk of the Court is respectfully directed to terminate ECF No. 10.

**SO ORDERED.**

Dated:    **October 12, 2023**
              **New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**